# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

MARGARET D. BEASLEY,     )
     )
    Plaintiff,     )
     )
v.     )    Case No. CV605-80
     )
JO ANNE B. BARNHART, Social     )
Security Administration Commissioner,)
     )
    Defendant.     )

## REPORT AND RECOMMENDATION

Plaintiff has brought this action challenging the Social Security Commissioner's denial of her application for a period of disability, disability insurance benefits, and supplemental security income. For the reasons that follow, the Court recommends the Commissioner's decision denying benefits be AFFIRMED.

## I.   BACKGROUND

### A.   Procedural History

Plaintiff filed her application for disability insurance benefits and supplemental security income on October 21, 2002. Tr. at 54-56. Her claim

was denied initially and on reconsideration. Tr. at 30-33, 35-38. Plaintiff requested an administrative hearing, which was held on November 17, 2004 before Administrative Law Judge ("ALJ") G. William Davenport. Tr. at 39, 45-48. At the hearing, the ALJ heard testimony from plaintiff and a vocational expert, Paul Dolan ("VE"). Tr. at 232-76. The ALJ issued a decision denying plaintiff's application for benefits on December 20, 2004. Tr. at 11-23. On June 3, 2005, the Appeals Council denied plaintiff's request for review of that decision. Tr. at 5-7; 8-10. Plaintiff then filed the present action for review of the Commissioner's decision, pursuant to 42 U.S.C. § 405(g). Plaintiff has exhausted her administrative remedies, and review under 42 U.S.C. § 405(g) is now appropriate.

## B.    Factual and Medical Background

Plaintiff was 56 years old when she allegedly became disabled and is currently 61 years old. Tr. at 54. She has a limited education through the eighth grade. Tr. at 15, 236. Plaintiff has worked as a sewing machine operator, a self-employed gas station/convenience store manager, and a waitress/cook. Tr. at 15, 237-38. As of the date of the ALJ's decision on December 20, 2004, plaintiff had not worked in any substantial gainful

activity since July 1, 2001, her onset date of disability.[1]  Tr. at 15.

## *Medical Evidence Presented to the ALJ*

In May 2000, plaintiff was treated for visual problems secondary to a posterior cerebral artery stroke.  Plaintiff complained of blurriness and loss of vision, and she was placed on Coumadin therapy.  Tr. at 140.  On June 26, 2000, she was seen by her treating family physician, Dr. Robert L. Pence.  During this visit, plaintiff reported that her vision was normal and had been for the previous two weeks.  Tr. at 146.  On follow-up visits to Dr. Pence, plaintiff continued to exhibit normal vision.  Tr. at 144.  Dr. Pence did not indicate findings of any residual medical problems resulting from plaintiff's stroke.

On March 2, 2003, plaintiff was given a consultative evaluation examination by Dr. Gerardo Guzman.  Tr. at 150-53.  Dr. Guzman found that plaintiff's visual acuity was 20/50 in both eyes without glasses and that plaintiff acted as if she had normal vision.  Plaintiff reported to Dr. Guzman that she had sustained an injury to her right knee and that the pain from

---

[1]The ALJ noted that plaintiff's earning record reflected that she had earnings of $575.00 in 2002; however, he concluded that $575.00, even if earned in one month, was not indicative of substantial gainful activity.

that injury was her primary medical problem. Tr. at 150. Plaintiff alleged that she had used a walker, borrowed from a sister-in-law, for the previous two years. Tr. at 150. While plaintiff used her walker when she arrived at Dr. Guzman's office, she was able to walk and climb onto the examination table without assistance. Tr. at 153. Plaintiff claimed that she felt safer using the walker. Dr. Guzman noted the difficulty in evaluating plaintiff's knee problems due to her insistence on using a walker; however, he concluded that she did not have any significant limitation at that time. Tr. at 153. X-rays of the right knee showed evidence of osteoporosis and minimal osteoarthritis. Tr. at 153.

Dr. Guzman also noted a history of hypertension and diabetes. Tr. at. 150. Her blood sugar was elevated, but her blood pressure appeared to be under control with medication. Tr. at 150. Plaintiff also complained of poor circulation in her legs. Tr. at 153. Plaintiff presented a "questionable history of circulatory problems with both legs since 1984" and reported falling frequently. Tr. at 150. Dr. Guzman noted that her "[p]eripheral pulses [were] weak but present on both sides." Tr. at 152. He also found

that she had no decubitus ulcers.[2]  Tr. at 150, 153.  In addition, Dr. Guzman noted that plaintiff stated she had stopped drinking alcohol approximately two years previously but that "recent reports" indicated she still drank.  Tr. at 153.

On March 17, 2003, a medical consultant, Phillip E. Gertler, M.D., conducted a physical residual functional capacity assessment on behalf of the State Agency.  Tr. at 20, 155-62.  Dr. Gertler concluded that plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and push and/or pull with no limitation.  Tr. at 156.  He stated that plaintiff could walk without a walker but would not do so because she did not feel safe.  Tr. at 157.  Plaintiff could not complete evaluative exercises because of the walker.  While plaintiff alleged she could not feel her feet, had pain in her legs, and fell because of these symptoms related to diabetes, Dr. Gertler concluded that these complaints were only partially credible due to inconsistent evidence in her medical records.  Tr. at 160.

---

[2]A "chronic u[lcer] that appears in pressure areas of skin overlying a bony prominence in debilitated patients confined to bed or otherwise immobilized, due to a circulatory defect."  Stedman's Medical Dictionary 1880-81 (26th ed. 1995).

On July 22, 2003, plaintiff was given a psychological consultative evaluation by John C. Whitley III, Ph.D., regarding her complaints of depression and difficulty concentrating. Tr. at 163-67. Plaintiff reported that she exhibited symptoms of depression for the past seven to eight months but had not been hospitalized or received any mental health treatment. Tr. at 164. Plaintiff stated that she constantly thought about medical issues and the future, as well as having difficulty with loss of functioning and dependency on her children. She informed Dr. Whitley that she had completed the 9th grade in school but had stopped going due to her family's excessive moving. Tr. at 163. Plaintiff denied any learning disability or behavioral problems.

Plaintiff detailed her daily activities to Dr. Whitley. She reported that she could read and follow written instructions; organized her daily activities and managed her own finances; needed assistance getting in and out of the bathtub but otherwise cared for herself; performed light housework, cooking, and yard work; watched television and read during the day; socialized and visited with her grandchildren and other family members; and described her appetite and sleep as "fair" though she woke frequently. Tr. at 164. Plaintiff described her activity level as "below average." Tr. at

164.  She denied the use of illicit drugs, cigarettes, or alcohol and claimed that she quit drinking six months earlier.  Tr. at 164.

Dr. Whitley conducted a mental status exam that showed plaintiff to be adequately groomed with a normal and responsive affect but a sad mood. Tr. at 164-65.  Her eye contact was good, and her speech was clear, coherent, and at a normal rate.  She displayed adequate grammar and language skills, as well as grossly intact short and long term memory.  Her ability to concentrate, however, was somewhat impaired.  Plaintiff was able to spell "world" forward and backwards; recite serial numbers by 3s, 5s, and 7s; recall 2 out of 4 items after a ten-minute delay; and demonstrated fair insight, judgment, and impulse control.  Tr. at 164-65.  Dr. Whitley also administered psychometric testing, which estimated her full scale Intelligence Quotient ("IQ") at 78, in the borderline range.  She scored a verbal IQ of 87, in the low range, and a performance IQ of 73, in the borderline range.  Tr. at 165-66.  On achievement testing, she displayed an eighth grade reading level and a fifth grade math level.  Tr. at 165-66.

Though she denied suicidal or homicidal ideations, phobias, hallucinations, or delusions, she presented as significantly depressed and somewhat anxious.  Tr. at 165.  Dr. Whitley described her attitude and

7

degree of cooperation as "adequate." Tr. at 165. Dr. Whitley's diagnostic impressions were of major depression, alcohol abuse in remission, and moderate stressors including her medical issues. Tr. at 167. He concluded that she would benefit from mental health treatment; appeared vulnerable to undue stress and demands; was mildly impacted by her depression in her interactions with others; and had fair ability to sustain effort and focus in the completion of assigned tasks, use appropriate judgment in a work setting, and engage in low stress work tasks. Tr. at 167.

On September 4, 2003, Cal VanderPlate, Ph.D., conducted a psychiatric review for the State Agency. Tr. at 168-85. In this review, Dr. VanderPlate found that plaintiff had moderate difficulties with concentration and was moderately limited in her ability to maintain attention and concentration for extended periods. Tr. at 178, 182. In an addendum, however, Dr. VanderPlate stated that plaintiff "has the ability to carry out simple tasks with adequate concentration." Tr. at 184.

On September 5, 2003, Richard H. Johnson, M.D., conducted a residual functional capacity assessment. Tr. at 186-93. Dr. Johnson determined that plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk for four hours in an eight-hour workday, sit

for six hours in an eight-hour workday, and push and/or pull with no limitation. Tr. at 187. He concluded that plaintiff was partially credible as to her need for a walker but that the severity of her allegations was not supported by evidence from her medical records. Tr. at 191. On December 16, 2003, an additional physical residual functional capacity assessment was done by Dr. Johnson. Tr. at 200-08. Here, he concluded that plaintiff could stand and/or walk for six hours in an eight-hour workday. Tr. at 201.

On November 3, 2003, plaintiff's treating family physician, Dr. Pence, submitted a letter stating that plaintiff was totally disabled. Tr. at 195. He declared the cause of her disability to be a stroke and diabetes. He also stated that she had hypertension. Plaintiff's last documented visit with Dr. Pence was on September 4, 2002. Tr. at 142. In a December 8, 2003 questionnaire, Dr. Pence attributed the problems in her lower extremities to her stroke and stated that she used (but not necessarily required) a walker. Tr. at 197-99.

On August 3, 2004, plaintiff was given a neurological consultative examination by Ranjit K. Sethi, M.D., at the request of the ALJ. Tr. at 209-14. Plaintiff reported her blood pressure and blood sugar level to be under control, and she appeared to be regularly taking her medication. Tr. at 209.

Plaintiff described weakness in her lower extremities that caused her difficulty in getting up from a sitting position.  Tr. at 209.  She also reported being diagnosed with depression but denied physical symptoms associated with depression, such as loss of appetite, nausea, or vomiting. Tr. at 209.  With respect to her physical conditions, Dr. Sethi noted that plaintiff did not appear to be in any acute distress, that her heart and lungs were normal, and that she had no evidence of cyanosis[3] or edema[4] in her extremities.  Tr. at 210.  Mentally, she was alert and fully oriented, with an intact memory, both recent and remote.  Plaintiff presented no vision problems and had no facial asymmetry.

Plaintiff entered the doctor's office using a cane. Tr. at 210. Dr. Sethi assessed her strength in her lower extremities as 5/5 distally and 4+/5 proximally.  Tr. at 210.  Sensory testing showed evidence of peripheral neuropathy[5] in the "glove and stocking distribution." Tr. at 210. Dr. Sethi

---

[3]"A dark bluish or purplish coloration of the skin and mucous membrane due to deficient oxygenation of the blood . . . ."  Stedman's Medical Dictionary 425 (26th ed. 1995).

[4]"An accumulation of an excessive amount of watery fluid in cells, tissues, or serous cavities."  Stedman's Medical Dictionary 544 (26th ed. 1995).

[5]"[A]ny disorder affecting any segment of the nervous system" or "a disease involving the cranial nerves, or the peripheral or autonomic nervous systems." Stedman's Medical Dictionary 1204 (26th ed. 1995).

10

also reported that plaintiff's proprioception was impaired.  Tr. at 210.

Plaintiff had difficulty rising from her chair but otherwise was able to

tandem walk.  Tr. at 211.  Dr. Sethi concluded that plaintiff had mild

proximal muscle weakness predominantly in her lower extremities, most

likely as a secondary symptom of her diabetes.  Tr. at 211.

Dr. Sethi completed a medical source statement following his

examination which detailed plaintiff's physical abilities.  He determined

that she could lift/carry 20 pounds occasionally and 10 pounds frequently;

stand/walk for three to six hours;[6] occasionally climb ramps/stairs, balance,

stoop, crouch, kneel, and crawl; frequently reach overhead; handle, finger,

and feel with her upper extremities; bilaterally pull/push to a limited degree

with her upper and lower extremities; sit, see, hear, and speak unaffected

by her impairment; and did not need an assistive device, such as a cane or

walker, to walk.  Tr. at 212-14.  Dr. Sethi determined that plaintiff could

not climb ropes/ladders/scaffolds and should not be exposed to hazards in

the workplace such as temperature extremes, humidity, or vibration.  Tr.

at 213-14.

---

[6]Dr. Sethi's handwriting as to this limitation is illegible as to the second number, which may be interpreted as a 4 or a 6.  The ALJ interpreted this figure as a 6, which appears to be a reasonable reading.

*Testimony Before the ALJ*

On November 17, 2004, the ALJ held a hearing and heard testimony from plaintiff and vocational expert Paul Dolan. Tr. at 230-76.

Plaintiff testified that she had gone to school through the 8th grade and could read and write. Tr. at 236-37. She stated that it had been since July 2001 when she last worked to earn money. Tr. at 237. Plaintiff stated that during her previous employment she had to lift and carry 10 pounds as a sewing machine operator and one job as a waitress or cook and that she had to lift 20 pounds as cashier/stocker at a convenience store and at three jobs as a waitress or cook. Tr. at 238.

The ALJ questioned plaintiff extensively on her current physical capabilities. Plaintiff testified that she would not drive because she was too weak in her legs and that her niece was afraid to take her shopping because of the possibility plaintiff would fall. Tr. at 239-40. Plaintiff stated that she did some light housework, laundry, and cooking but did not vacuum, sweep, or carry her laundry basket. Tr. at 241-42. She also testified that she could not do any yard work and had not for over three years. Tr. at 243. Plaintiff testified that the worst problem she had as far as performing a job task was with the strength in her legs and arms, specifically the possibility that she

would fall. Tr. at 244. Plaintiff also complained of soreness and swelling. Tr. at 244-45.

Plaintiff also complained that she would have a difficult time returning to work because she was "just not used to being around people." Tr. at 246. Plaintiff basically said that everyone, including her grandchildren, got "on her nerves" and that she would "get upset or go to crying [at] just any little old thing." Tr. at 246-47.

On examination by her representative, plaintiff also testified that she had a ramp built on her deck and "grab bars" installed in her bathroom. Tr. at 248. Plaintiff speculated that her diabetes caused the weakness in her legs. Tr. at 249. Plaintiff testified to using a walker and stated that without the walker, she would fall. Tr. at 252. Plaintiff admitted that the walker was not prescribed by a doctor, though she stated that her doctor had verified that she needed it. Tr. at 252. Plaintiff also stated that she could not lift a 5 pound bag of sugar for any extended period of time. Tr. at 253. She testified that she cannot sit for more than an hour at a time and could not stand or walk at all without the use of a cane or walker. Tr. at 254. Finally, she testified that she could not depress the brake pedal in her car and thus could not drive. Tr. at 256-57.

After advising the ALJ of further information he needed based on inconsistencies or questions unresolved and reviewing the vocational information in plaintiff's file, the vocational expert (VE) specifically asked plaintiff to describe her job as a cashier/stocker at a convenience store. Tr. at 259. Plaintiff explained that she was the owner of a "little county store," where she "did everything, just about it." Tr. at 259. This included being cashier, stocking, keeping books, filing taxes and lifting and carrying at least 20 pounds. Tr. at 259-60.

The VE defined plaintiff's previous work in terms of the classifications defined in the Dictionary of Occupational Titles ("DOT"). For her work at the gas station, the VE defined the job "as a manager, automobile service station, 185167014, SVP of 7, skilled, exertional level is heavy, as defined in the DOT." Tr. at 261. The VE, however, stated that "it appears [this job] was done at the light level." Tr. at 261. The VE also described the "transferable skills" from her gas station job: "preparing budgets, keeping records, conducting inventory, being tactful and courteous with the public, and money handling skills . . . ." Tr. at 262.

The ALJ then presented a hypothetical to the VE:

14

It is a light exertional level, with a sit/stand option. It has a number of other limits, which we'll go into. Assume that I found on the basis of the credible evidence before me that the claimant had demonstrated exertional impairments reflecting a residual functional capacity for a range of light work with a sit/stand option. Occasionally she could balance, occasionally she could climb, but never on a ladder, rope, or scaffold. Occasionally she could crawl, occasionally crouch, occasionally kneel, occasionally stoop.

. . . Additionally, she would have the following limitations with both arms and hands. This is bilaterally. She would be limited to frequently reaching, including overhead reaching with both hands, frequently handling, frequently feeling and fingering. . . . She would be limited to occasionally pushing and pulling with both arms and both legs. Occasional push and pull with both arms and both legs.

Additionally, there would be the following limitations. There should be no work around hazards, such as, for example, unprotected heights or unguarded dangerous machinery. There should be no work about, around extreme temperatures, extreme amounts of humidity and vibration. Note here, however, since the claimant can drive a car, she can, thus, tolerate some vibrations. We're talking about heavy vibration that she wouldn't be able to tolerate. She must be allowed to wear glasses due to some limited near and far acuity of vision. Claimant would be best suited, also, for simple, low-stress work, but not around alcoholic beverages.

> Now, under the provisions of this hypothetical
> question, first of all, could [claimant] return to any
> of her prior jobs, either as she performed them or as
> they are typically performed in the national
> economy, in your professional opinion?

Tr. at 263-64. The VE responded by asking for several clarifications.

Regarding "simple, low stress work," the ALJ attempted to refine his

hypothetical:

> I don't really know how to define it much more than
> that. Simple work, which doesn't put a lot of
> pressure on the person, I suppose, emotionally
> speaking. We're, we're, we're talking about
> something that's not going to cause, the, the typical
> person to be flustered a lot, I suppose, is what the
> real, the real thrust of the question. It's what the
> state agency had told us, along with the
> psychological examiner, exhibits 10F and 6F,
> respectively. It seems like that's what they were
> driving at.

Tr. at 164-65. The VE also asked for clarification on the hypothetical with

respect to the sit/stand option and the attendant time limitations. The ALJ

noted that the time limits would be at the discretion of the employee based

on plaintiff's testimony that she needed to sit and stand periodically for

different lengths of time. Tr. at 265.

　　The VE then testified that, in his professional opinion, plaintiff could

preform her previous work as a manager of an automobile service station,

as performed, not as defined, including providing for the sit/stand option. The VE testified that the work of cashier and selling gasoline would allow for discretionary periods of sitting and standing, in line with the ALJ's refined hypothetical. Tr. at 266. The VE further testified that plaintiff's complaints of soreness and mild pain would not change his opinion. Tr. at 266.

Plaintiff's representative then questioned the VE regarding the limitation on "simple, low stress" work and his conclusion that plaintiff could perform a job at SAP 7. The VE admitted that the DOT job he used as reference, automobile service station manager, was a skilled position. The VE, however, attributed most of the skill in this job to the mechanical aspects of running a service station and distinguished the job as plaintiff had performed it because her job as manager of a "little grocery store" "sounded like just selling gas and some groceries." Tr. at 267. The VE testified that her past job did not appear to be complicated, even though he still labeled it as a SAP 7. The representative noted that in his experience the type of work plaintiff performed, such as bookkeeping and ordering merchandise, equated to a skill level of SAP 4 or 5 and that "simple, low stress" work equated to "an SVP of 1 or 2, possibly a 3." Tr. at 267.

Nonetheless, the VE testified that he believed plaintiff could return to her past work, and referenced his attempts at seeking clarification from the ALJ as to the definition of "simple, low stress" work.

### The ALJ's Final Decision

In the ALJ's final determination, he outlined his conclusions as to plaintiff's residual functional capacity, which incorporate the parameters stated in his hypothetical to the VE.  Tr. at 22.  Then, the ALJ noted the VE's cross-examination testimony, finding that plaintiff's "gas station manager's job (D.O.T. #185.167-014), as the claimant performed it, was really simple and low stress light exertional work that would accommodate the need for a sit/stand option."  Tr. at 22.  Noting that "[h]er work was not in any way detailed, complex, or complicated[,]" the ALJ determined that plaintiff could return to her past work as manager of a convenience store, as she preformed it, and found that plaintiff was not entitled to a period of disability.  Tr. at 22-23.

With respect to the medical evidence in the record, the ALJ discounted the 2003 opinions of Dr. Pence, as there was no indication that he had recently seen plaintiff and his medical conclusions were challenged

by other medical evidence in the record. Tr. at 17. Ultimately, he afforded the conclusions of Dr. Pence no evidentiary weight. Tr. at 21. The ALJ credited the findings of Dr. Sethi, Dr. Whitley, and the State Agency medical and psychological consultants. Tr. at 21.

The ALJ also assessed the credibility of plaintiff's complaints. While he found her generally credible, he discounted the descriptions of her pain and limitations. Tr. at 21. The ALJ found that plaintiff could do more physically and concentrate to a higher degree than she stated. He specifically referenced her ability to cook, wash dishes, load and unload laundry, as well as watch and follow plots on soap operas and in mystery and romance novels. Tr. at 21.

## II.   STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits pursuant to sentence four of 42 U.S.C. § 405(g) is limited. The reviewing court may not decide the facts anew, re-weigh the evidence, or substitute its judgment for that of the ALJ. Barron v. Sullivan, 924 F.2d 227, 229-30 (11th Cir. 1991); Arnold v. Heckler, 732 F.2d 881, 883 (11th Cir. 1984). Even if the weight of the evidence is contrary to the ALJ's determination,

the Court must affirm the administrative decision if there is substantial evidence in the record to support it. <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991); <u>Barron</u>, 924 F.2d at 230; <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Walden v. Schweiker</u>, 672 F.2d 835, 839 (11th Cir. 1982). Nonetheless, this standard does not relieve the Court of its duty to scrutinize carefully the entire record to determine whether substantial evidence supports each essential administrative finding. <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983); <u>Walden</u>, 672 F.2d at 838.

The presumption of validity afforded to the ALJ's findings of fact, however, does not apply to his conclusions of law. <u>Martin</u>, 894 F.2d at 1529; <u>Wiggins v. Schweiker</u>, 679 F.2d 1387, 1389 (11th Cir. 1982). Failure to apply correct legal standards or to provide the Court with a basis to determine whether correct legal standards were applied constitutes grounds for reversal. <u>Martin</u>, 894 F.2d at 1529; <u>Wiggins</u>, 679 F.2d at 1389.

The Commissioner has adopted a five-step analysis for evaluation of disability claims. 20 C.F.R. § 404.1520. At step one, the Commissioner must inquire whether the plaintiff was employed during the period of the

alleged disability.  If the plaintiff held substantial gainful employment during the time of the alleged disability, the Commissioner must deny benefits.  At step two, the Commissioner must determine whether the plaintiff suffers from a severe impairment.  Upon a conclusion that the plaintiff's impairment is severe, the Commissioner must determine whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1.  A finding that the impairment meets or equals a listed impairment conclusively establishes disability (step three).   If the impairment, though severe, does not meet or equal a listed impairment, the Commissioner must review the plaintiff's residual functional capacity and the physical and mental demands of past work (step four).  If the plaintiff can still perform past work, the Commissioner will find that the plaintiff is not disabled.  If, on the other hand, the Commissioner finds that the plaintiff cannot perform past work, he must then determine whether the plaintiff, based on age, education, and past experience, can perform other work (step five).  In this case, the ALJ determined that plaintiff could perform her past work, as an owner of a gas station/convenience store (as she performed such work), and, therefore, that she was "not disabled" under step four.

## III.  ANALYSIS

Plaintiff raises four issues in her request for review.  Plaintiff argues that the decision of the Commissioner is not supported by substantial evidence because:  (a) the ALJ did not consider all of the relevant factors in determining that plaintiff could return to her past work as owner of a gas station/convenience store; (b) the ALJ did not properly include a function-by-function assessment of plaintiff's maximum ability for physical function by referring to standing or walking ability as three to six hours; (c) the ALJ posed an incomplete hypothetical question because he did not include the limitation of "some impairment in concentration;" and (d) the ALJ did not define the phrase "low stress."

### A.  Consideration of Relevant Factors

Plaintiff argues that the ALJ erred by not considering all of the "relevant factors" when he determined that plaintiff could perform her past work.  Specifically, plaintiff argues that the ALJ made the following mistakes:

> (1) finding that plaintiff's past work was past *relevant* work because there was no evidence that such work was substantially gainful;

(2) finding plaintiff could do her past work, which was skilled, when he limited her to unskilled, sedentary work;

(3) finding plaintiff could do her past work when the physical demands of that work exceeded the ALJ's residual functional capacity;

(4) accepting the VE's testimony that a person who is limited to "simple, low stress" work could do work at the SAP 7 level;

(5) failing to address whether plaintiff's past work involved working around alcohol; and

(6) finding plaintiff could do her past work when that work required standing or walking six hours per day and pumping gas when the ALJ limited plaintiff to work that would allow her to alternate sitting and standing at will.

The Court's duty with these inquiries is to review the complete record and determine whether there exists substantial evidence to support the ALJ's findings.

Plaintiff argues that her past work was not past *relevant* work because there is no evidence that such work was substantially gainful. Specifically, she notes that "there is no evidence any of [her income during two months of 1987] came from her work operating a store." Doc. 8 at 16. "Substantially gainful activity generally is reflected in earnings." Carter v.

Apfel, 2000 WL 360222, *2 (S.D. Ala. March 14, 2000); 20 C.F.R. § 416.974.

For work in calendar years 1987, 1988, and 1989, work is considered

presumptively gainful when the claimant earns, on average, at least $300

per month. 20 C.F.R. § 416.974(b)(2) (Table 1). For work between January

1990 and July 1999, work is considered presumptively gainful when the

claimant earns, on average, at least $500 per month. Id.

The past relevant work in this case, owner of a gas

station/convenience store, occurred between March 1987 and January 1991.

Tr. at 82 (Social Security Administration work history report, completed

and signed by plaintiff on November 19, 2002). Plaintiff states that she

earned $2,000.00 per month while in this position. With such a rate of

earnings, her previous employment is presumptively gainful.[7] There exists

substantial evidence in the record for the ALJ's finding that her past work

was substantially gainful and, thus, past relevant work.[8]

_____

[7]Plaintiff points to the official Social Security Administration earnings report to argue that she did not earn sufficient income in this period to make her past work (from March 1987 to January 1991) substantially gainful. This report indicates plaintiff earned $4,400.02 in 1987, $12.85 in 1988, and nothing in 1989, 1990, and 1991. Tr. at 61. Plaintiff's own admissions reflect a significant monthly earning during this period.

[8]Furthermore, the Commissioner notes that the burden of establishing that plaintiff's past work was not relevant past work falls on plaintiff. Doc. 11 at 3-4 (citing Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). Plaintiff did not meet her burden of showing to the ALJ, or to this Court, that her past work was not relevant past work when she has claimed that she earned $2,000.00 a month at the subject job.

Plaintiff next argues that the ALJ limited plaintiff to unskilled, sedentary work but found that she could perform her past relevant work, which was skilled work.  This argument is foreclosed by the hypothetical given to the VE by the ALJ.  Nowhere in the hypothetical does the ALJ limit plaintiff to "unskilled, sedentary work."  Instead, the ALJ limited plaintiff to "simple, low stress" work with a sit/stand option.  The VE found that plaintiff could return to her past work as she performed it with these limitations.

Plaintiff also argues that the ALJ erred by finding that she could perform her past relevant work, though the demands of that work exceeded her residual functional capacity.  As this Court does not sit to re-weigh the evidence, the Court must assess whether substantial evidence exists for the ALJ's determination of plaintiff's residual functional capacity and for his decision that, given that residual functional capacity, plaintiff could return to her past relevant work.

Substantial evidence exists in the record to support the ALJ's determination of plaintiff's residual functional capacity.   The ALJ determined plaintiff's residual functional capacity to be:

> [S]he can lift/carry 20 pounds occasionally and 10
> pounds frequently; stand/walk a total of 3 to 6
> hours, if allowed the option to alternate
> sitting/standing; occasionally climb ramps/stairs but
> never ladders/ropes/scaffolds; occasionally balance,
> stoop, crouch, kneel, and crawl; frequently reach
> (overhead and in all directions), handle, finger, and
> feel with her upper extremities; and occasionally
> push/pull with her upper and lower extremities,
> bilaterally. She does not require an assistive device
> to walk but she cannot climb ropes/ladders/scaffolds.
> She is unaffected by her impairment in her ability to
> sit, hear, and speak. She must be allowed to wear
> glasses due to limited near and far acuity, and she
> should not be exposed to hazards (heights and
> machinery), temperature extremes, humidity, or
> vibration in the workplace. She is best suited for
> simple, low stress work but without access to
> alcoholic beverages.

Tr. at 22. Each portion of this assessment is supported by substantial

evidence in the medical record that was before the ALJ. See Tr. at 167 (fair

ability to sustain focus, engage in low stress work tasks); 184 (same); 201

(stand/walk 6 hours in an 8-hour day); 212 (lifting/carrying limitation;

standing/walking limitation), 213 (sitting, climbing, balancing, stooping,

crouching, kneeling, crawling, reaching, handling, fingering, feeling, seeing,

hearing, speaking, pushing/pulling limitations); 214 (environmental

limitations).

Using this assessment, the ALJ presented a hypothetical to the VE, who concluded, in his professional opinion, that plaintiff could return to her previous work as manager of a convenience store, as she performed it. When the ALJ presents a hypothetical to the VE based on the medical evidence in the record, the VE's opinion expressed in answering that hypothetical constitutes substantial evidence for the ALJ to issue a finding consistent with the VE's testimony. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987) (VE's answer to proper hypothetical was substantial evidence underlying final decision). Here, the ALJ relied on the VE's opinion in making his final decision, and the VE's opinion was substantial evidence in the case. Therefore, as this Court may not re-weigh the evidence, this claim has no merit.

Plaintiff next argues that the ALJ erred in "accepting" the VE's testimony that plaintiff could perform her past relevant work at a SAP 7 level, when the ALJ limited her to "simple, low stress" work. Again, the question for the Court is whether substantial evidence exists in the record to support the ALJ's conclusion. Here, the ALJ limited plaintiff to "simple, low stress" work. The VE sought clarification on what this phrase entailed. Ultimately, the VE, using the ALJ's definition, found that plaintiff could

return to her past job as she performed it.[9]  The VE relied on the ALJ's clarifying statements, which were based on evidence presented within the record.  The ALJ's final decision is based on the VE's testimony, which he properly relied upon in reaching his conclusion.  Therefore, there exists substantial evidence for the ALJ's final decision.

Plaintiff also argues that the ALJ erred in failing to address whether plaintiff's past work involved working in the proximity of alcohol.  Plaintiff however ignores the ALJ's specific limitation that plaintiff could not work around alcoholic beverages.  The VE, considering this limitation, testified that, in his opinion, plaintiff could return to her past work as she performed it.  Therefore, substantial evidence exists in the record for the ALJ's decision.  Furthermore, plaintiff's specific objection—that the ALJ failed to consider proximity to alcohol—is countered by the express language of the ALJ's hypothetical.[10]

Plaintiff finally argues that the ALJ erred in finding that plaintiff could do her past relevant work as she described it, which involved standing

---

[9]One distinction to note is that the VE's characterization of plaintiff's previous job "trumps" the description in the DOT.  Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999).

[10]In addition, the burden to show that plaintiff's previous work did involve proximity to alcohol rests with plaintiff.  Barnes, 932 F.2d at 1359

for six hours and pumping gas, when the ALJ limited her to work that would allow her to alternate between sitting and standing. The ALJ presented an appropriate hypothetical to the VE, limiting the hypothetical to jobs with a sit/stand option. When the VE answered the ALJ's hypothetical, the ALJ specifically inquired as to whether plaintiff's previous job as a manager of a gas station, as she performed it, allowed for a sit/stand option. The VE testified that, considering plaintiff's testimony that her job was primarily as a cashier and included selling gasoline, plaintiff's previous work would allow for the sit/stand option. Tr. at 265-66. Thus, the ALJ had substantial evidence to support his finding.

## B.    Function-by-function Assessment

Plaintiff argues that the ALJ did not properly include a function-by-function assessment of plaintiff's maximum ability for physical function by referring to standing or walking ability as three to six hours. The Court must determine whether the record contains substantial evidence to support the ALJ's findings. The ALJ found that plaintiff could stand or walk three to six hours. Tr. at 22. It appears that the ALJ based this finding on Dr. Sethi's neurological consultative examination, as well as the

opinion of Dr. Gertler in his assessment of plaintiff's physical residual functional capacity.  Tr. at 18; 156, 212.  Dr. Sethi's report states his conclusion as to the duration of time that plaintiff could stand or walk during an eight hour workday.  Unfortunately, the handwriting on the report creates an ambiguity.  While it is clear that the bottom range is three hours, the upper range could easily be interpreted as a four or a six.  Tr. at 212.  Obviously, the ALJ interpreted this unclear handwriting as a six.  In addition, Dr. Gertler specifically found that plaintiff could stand and/or walk up to six hours in an eight-hour workday.  Tr. at 156.  Dr. Johnson also reached this conclusion.  Tr. at 201.

While ALJ findings typically give a specific hourly number with respect to standing and/or walking, occasionally an ALJ may use a range, when that range is supported by substantial evidence in the record.  See Sullivan v. Apfel, 2000 WL 1568330, *5 (S.D. Ala. Oct. 1, 2000) (listing medical evidence stating that claimant could stand and/or walk six to eight hours); Boone v. Apfel, 2000 WL 284280, *4 (S.D. Ala. March 1, 2000) (plaintiff could stand three to five hours and walk two to four hours).  Here, the ALJ made a finding of a range for plaintiff's ability to stand and/or walk based on his reading of medical evidence in the record.  As this finding is

supported by substantial evidence, there is no error in the ALJ's conclusions.

## C. "Some Impairment in Concentration" Limitation

Plaintiff argues that the ALJ erred in failing to include a "some impairment in concentration" limitation in his hypothetical. Plaintiff misreads the ALJ's conclusions as to plaintiff's ability to concentrate. Based on the medical record before him, the ALJ did not conclude that plaintiff had "some impairment in concentration," though such a conclusion could have been reached based on the evidence presented. Instead, based on plaintiff's testimony regarding her ability to watch television, follow the complicated plots and characterizations in soap operas, and read mystery and romance novels, as well as the finding by the State Agency psychological consultants that plaintiff could carry out simple tasks with adequate concentration, the ALJ found that concentration was not an issue that must have be included in his hypothetical to the VE. There is substantial evidence in the record to support this conclusion. This Court is not permitted to re-weigh the evidence and insert its judgment for the factual conclusions of the ALJ. Thus, this claim has no merit.

## D.    Definition of "Low Stress"

Plaintiff argues that the ALJ erred because he found that she would require a "low stress" job but the VE did not "interpret" this limitation. When presenting the hypothetical, the ALJ limited plaintiff to "simple, low stress" work.  The VE sought clarification on what this phrase entailed. Ultimately, the VE, using the ALJ's definition, found that plaintiff could return to her past job as she performed it.  The VE relied on the ALJ's clarifying statements, which were based on evidence presented within the record.  The ALJ's final decision is based on the VE's testimony, which is substantial evidence in the record.

The record is admittedly confusing on this issue, as the ALJ struggled to define "simple" work.  The ALJ defined "simple, low-stress" work as work that would not "put a lot of pressure" on the employee and not cause the "typical person to be flustered a lot."  Tr. at 265.  The ALJ derived these limitations from the medical evidence within the State Agency consultants' assessments.  Tr. at 264-65 (referencing exhibit 10F, Dr.

VanderPlate's assessment[11]).  Taking into account these clarifications, the VE found that plaintiff could return to her pervious work.

Regardless of the VE's failure to explicitly interpret the "simple, low-stress" work limitation, the VE's testimony, in consideration of his instructions, provides sufficient support for the ALJ's decision. Furthermore, there is substantial evidence in the record as a whole to support the ALJ's decision.  Tr. at 22.  The ALJ determined that the tasks involved in plaintiff's prior work as the manager of a "little country store" were not "in any way detailed, complex, or complicated."  Tr. at 22.  While "[i]t was true that she did everything (e.g., budget preparation, records, inventory, handling money, customer relations), . . . there was not much of these tasks to do in a small, solo (one person) operation."  Tr. at 22. Plaintiff's own testimony underscores the simplicity of her previous job, as she performed it.  Tr. at 259-60.  She stated that there was not much bookkeeping to be done, and she emphasized that it was "just a real small . . . country store."  Tr. at 260.  The ALJ found that plaintiff could perform

---

[11]Dr. VanderPlate noted that plaintiff could understand and remember simple instructions and carry out simple tasks with adequate concentration. While he noted her "[p]ace my be slower[,]" he concluded that her "[r]estrictions are not substantial." Tr. at 184.

her work at this previous job, as she had done it, and there is substantial evidence in the record to support that finding.

## IV.   CONCLUSION

Based on the foregoing, the Court RECOMMENDS that the decision of the Commissioner be AFFIRMED.

**SO REPORTED AND RECOMMENDED this** _____ **day of September, 2006.**

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA